On behalf of the Avalanche, Mr. Peter Katsouris. On behalf of the Athlete, Mr. Christopher Grant. Mr. Katsouris? There's been a motion filed to cite additional authority. Have you had an opportunity to review that? I have, Judge. We have no objection. Thank you. The motion will be granted. You may proceed. Good morning. May it please the Court. I'm Peter Katsouris. I'm joined in the representation of the appellants by my co-counsel Laura Balson and Harry Lee. We are here today on an appeal from a final judgment following a jury trial and a verdict for a plaintiff on one count of legal malpractice. We are asking this Court to reverse the verdict, send the case back to the McHenry Court for a retrial on two counts. Common law fraud and in the alternative, legal malpractice. Counsel, how did you comply with Foxcroft? We complied with Foxcroft by also following the order of the trial court judge who told us he would only allow us to file a third amended complaint, a one count complaint in legal malpractice, which we did. And then the trial judge said, and then I'm going to ask you to file a motion for leave to file a third amended complaint containing two counts, but in the alternative. So we followed that court's order and we asked him for leave to file a third amended complaint containing count one of legal malpractice and count two of common law fraud. And then he denied us leave to do that. But counsel, our Supreme Court has specifically indicated that following the trial court judge's advice in that regard is not sufficient to preserve the objection. So how do we get around those Supreme Court decisions? Bonhomme, Boatman? Your Honor, to not do that would put me in violation of the court order. I do not believe that we have plead over. We filed a motion for leave to file an amended complaint, which contained the very count that we were preserving for appeal. So in our view, we have satisfied the second alternative under Foxcroft. Which was? Which was filing an amended complaint containing. At least attempting to file an amended complaint. Yes, Your Honor. Attempting to file it and we were not given. The complaint that was filed had no footnote in it and no reference whatsoever to the second fraud count. Correct? To or to your intent to preserve your objection to the dismissal of the fraud count. That is correct. So therefore. To do so. Excuse me, I don't mean to interrupt you. Go ahead. No, that's fine. To do so would have put me in violation of a trial court order. All right. Well, you weren't going to be held in contempt of court for that. You're not telling me that you were afraid you'd be held in contempt of court. But it's your obligation to follow the Supreme Court's direction, correct? Yes, it is. And in all due respect, I think we have done that. We have studied Foxcroft. We believe the record is clear. And I'm telling you from my personal experience, when that trial judge told us and he dismissed the second amendment complaint, he was very definitive and he told me point blank, this is how you're going to do it. And I'm not going to allow you're going to file that one count. That's all I'm allowing you to do it. And then if you want to seek leave to file a fraud count, you have to ask me for permission to do it. Let me ask you this. You had the opportunity to request 304A language and take an appeal, correct? That is one of the. You chose not to do that and chose to go to trial on a malpractice count that was remaining, correct? We did do that. Which, as Justice Zinoff just discussed, did not include a reference to the dismissed fraud count, correct? Your Honor, the count that we went to trial on did not refer to it. But throughout the proceeding, throughout summary judgment, we again referred to the fraud count that was improperly dismissed. On the post-trial motion, we again referred to the fraud count that was improperly dismissed and asked for a new trial on that basis. But with the efforts. We never. I didn't mean to interrupt you. We never abandoned. We never abandoned the fraud count. It was clear from the time we filed it to the time we filed the notice of appeal that we were trying to litigate that fraud count. And the trial court would not allow us to plead in the alternative. His view was if you sue a lawyer, you've got to make a decision at the beginning. And you cannot plead in the alternative fraud and or legal malpractice. That was the hurdle that the judge put up for us, which we think is not supported by Section 2-613. The point that I'm trying to make with you is the interest, the policy concerns addressed in Foxtrot are specifically designed to inform trial counsel what they need to do to preserve a dismissed count. And you did not comply. With all due respect to you, with all due respect to the court, I complied with Foxtrot by filing a motion preserving the fraud count in its integrity. The complete fraud count is there. It's in the record. And the trial judge told me that's how I'm going to allow you to present the fraud count for the third for the for the motion for leave to amend. And we believe in our view we have satisfied. Why did you go to trial? We want to try taking an appeal for most. We went to trial. Number one, we had the option to do so. There is no law in Illinois that required us to give up the leverage of going to trial. We went to trial because for the last 25 years, 98 percent of all civil cases settle without a jury trial. We wanted the leverage of the trial to try and settle the case, which the Gailors have been trying to do from before the litigation started. And that's why we chose to preserve our fraud count. We were always talking about fraud. We were talking about fraud in the final pretrial conference. When we tried to get it settled, we were talking about it in summary judgment. We were talking about it in post trial. Is this in your argument? Yes. Yes, it is. It is. The settlement negotiations. I did not. OK. Excuse me, Your Honor. I don't mean to interrupt. It's in the record. OK. The argument about summary judgment and post trial motion are in the case. But counsel, isn't going to trial and now asking us to reverse and allow a trial on both counts completely contrary to the policy considerations behind Foxcroft? Isn't that what the three rules of Foxcroft are designed to avoid? Just the situation we have here. Your Honor, I don't. I think. I think now that I'll do respect. I think that both litigation counsel, plaintiff and defense, when that decision was made by the judge, which we viewed as completely erroneous, knew that if the litigation continued, it continued with a big question mark as to whether this case was going to come back. And defense counsel rolled that dice. We think, you know, we think they were wrong. But we think we have satisfied the policy's concern. The policy concerns are put everybody on notice of what claims you have. But you didn't ask for a stay in the trial court either. You just went right ahead. I mean, in Childs, they asked at least for a stay while all this was resolved. We believed we believed that the best way to get the case resolved was to push for trial. That was our view. And and we won that trial. And it can still be resolved without further litigation. You know, the defendant hasn't chosen to go that way. But we had firm, firm case law and a statute which said that we could plead and sue these lawyers who had lied to these people. They had lied to them. We could sue them in the alternative. And the law is there. Section 2, 6, 6, 1, 3. Can I ask you a question, please? Absolutely. Most of the case law says something about abandonment. And it talks about certain things that are done that would indicate abandonment. And the way you've related the situation, you suggest not only did you not abandon it, but that the trial court at virtually every stage of the proceeding knew that you were not abandoned. Is that correct? That is correct. Is it also correct that opposing counsel was present during the conversations between plaintiffs, counsel and the court? Yes, Your Honor. Did defendant's counsel at any time say there's been an abandonment or I don't understand? Or anything like that that would suggest that he or she was not on notice that you were attempting to preserve your rights? No, Your Honor. So if I were to ask the appellee, assuming for the moment that you're the appellee, where in the record would it indicate that the plaintiffs abandoned the right to contest whether or not the fraud count should have been dismissed? Where in the record would you find that? In my view, you would not find it there. And that's why we said in our reply brief that the argument based on that was not an accurate statement of the record. Would there be anything that the trial court said or didn't say that might indicate that the trial court concluded or presumed that you had abandoned your rights? I firmly believe that is not the case. That judge knew we were always proceeding with fraud and were never giving up on it. We disagreed with him on our reading of the law, but never on the abandonment of the claim. This was a jury trial, was it not? Yes, it was. Was there a post-trial motion filed? There was. Was there any discussion about abandonment then? I do not remember what the appellee said in the post-trial about the fraud claim as to abandonment. I do remember asking the trial court to give us a new trial because the fraud claim should be in the case and we should go to trial on that. I do remember our position. I do not remember exactly every argument made, but I'm happy to research that if the court wants a supplemental answer. Thank you. Okay. The case law, the Gaylords were intentionally misled by these lawyers who, under the Third Amendment complaint, are pled not to be lawyers. They are business people interacting with people, with lawyers who are not their lawyers. These lawyers told them, we will protect your interest in the deal. That was not true. They told them in the month before the closing, when $350,000 was lost in a three-hour period, that we had in our hand the patents that you want in the name of the inventor. We have them in our law office in Crystal Lake. That was not true. And Plaintiffs' Exhibit, the September 25, 2002, Gomerson, one of the senior partners of that firm, had in his office indications that only draft patent applications had ever been filed. We have evidence of fraud in this case and we pled it. They said falsely to these business people, you do not need separate and independent counsel. You have what you need to close. Right, but that statement, separate and independent counsel, couldn't that also be interpreted to mean that we are your counsel so that that goes to whether or not there's an attorney-client relationship that was established, which actually would go to count one, legal malpractice? We would say no, Your Honor, because our fraud count is pled in the alternative. And this fraud count, coming up on a 615 motion, the facts have to be accepted as true. And the facts pled in that count are that there was no attorney-client relationship between the lawyers making those remarks and the plaintiffs. The case law on which we relied and we urged the court to file and apply includes Dollar v. Ogden, where a plaintiff was allowed to plead inconsistently a police renewal and a new lease. This court in Alley v. Champion reversed a jury verdict. When a defendant tried to cross-examine a plaintiff on the fact that they had pled inconsistently and tried to use a pleading against the plaintiff. That's how much this court protected the right to plead inconsistently. The case law attorneys who are not in an attorney-client relationship with business people like the Gaylords can be sued in fraud, intentional tort, and punitive damages can be awarded against them. The Carpenter Welfare Fund case, the Cripe case, and appellate courts in three other states. We did not waive the error in dismissing the fraud count. I've already covered that point. The fraud claim is critically important to the Gaylords. Critically important. They cannot be made whole unless they're able to try that fraud count. Because the scope of damages, both compensatory and punitive, are far greater than what you can recover in negligence. And a second very important policy reason is that unless this jury verdict is reversed and they are allowed to try the fraud case, this case would put our profession in disrepute. Because it would allow lawyers to lie to non-clients. We should not permit that. I urge you not to permit that. Alternatively, we've asked the court to order a new trial on damages. The undisputed... You can finish. Thank you. The undisputed evidence of trial was $365,000 was paid at that closing. The checks were all in there. The jury cut that in half for no good reason. There was no contributory negligence instruction, no comparative negligence instruction. They cut it in half. There was nothing in the instructions that they could use to cut an undisputed amount in half. Likewise with the other expenses, they were undisputed, and we've argued that in our brief. So we would ask the court to reverse for the reasons given, to allow them to recover their damages, and to protect our profession from this type of misconduct. Any questions? Not right now. Thank you. You'll have an opportunity for rebuttal. Thank you, Judge. Good morning, everyone. Good morning, Judge. My name is Chris Graham. I'm with Jones Lemon & Graham in Geneva, and I represent the Canadian law firm in Lee Lockwood. We ask that this court affirm the order dismissing the fraud count in the second amended complaint, and the order denying the gaoler's motion for leave to file an amended fraud count that was identical to the fraud count that was dismissed, that was in the second amended complaint. And we ask that this court affirm the jury award of damages as supported by the evidence and based on our waiver argument. Counsel, how do you respond to counsel's argument that they did not abandon the fraud count? The order, there's nothing in the judge's order from April 25, 2011, that said that they couldn't follow the Foxcroft rule. If you read the order, there's nothing in the order that said they couldn't file an amended complaint that included the fraud count that was dismissed and said in a footnote or otherwise that they were restating that dismissed fraud count solely for the purpose of preserving the issue of error for appeal. They chose not to do it. But didn't the trial court tell them to file a separate motion for leave to file an amended complaint, a two-count complaint? He did because he wanted to give them an opportunity to fix up the problems that he found with their deficient fraud and punitive damages count. He was right in dismissing it, and I get into that in the brief. But he gave them an opportunity to fix things. What did they do? They, instead of taking that opportunity to fix things, they filed a motion to file an identical, a fraud count that's identical to the one that was dismissed that we had extensive briefing on, that we argued, that he addressed. Is he being paradoxical or contradictory relative to the argument that this was waived and abandoned when apparently you're criticizing the plaintiff for filing the exact same thing, which suggests to some reasonable people that when you file the exact same thing, it means either you don't know what you're doing or you know intentionally that you're filing the same thing, and when you file the same thing, you are not abandoning that which you filed a second time? All I know is, Foxcroft, I know my Supreme Court decision in a long line of cases set out the right way to do things, and they didn't follow the right way. No, they set out criteria upon which they found that as a matter of fact, or at least it wasn't against the manifest way to the evidence, that somehow the issue of whether or not there was abandonment did or did not take effect. They didn't have a formula. If you read the quote in Bonholm, it says, somehow this has to be done. Well, can you define somehow to me? What does somehow mean? It's very narrow or it's very broad? I read Foxcroft, I read Vallardo, I read Bonholm. It seemed to me if I've got one of my counts dismissed, I know what I have to do. I have to either seek a 304 order or I have to, when I file my amended complaint, I have to cross-reference it or the dismissed count or repeat it and say I'm doing it to preserve my argument of error and appeal. And I guess I wouldn't think that it would be appropriate for me to seek leave to file an amended complaint that doesn't amend anything. What did they expect this judge to do? Re-argue the issues again? Come on. We've been through this before. Well, then what's the point of filing an identical complaint unless it's to preserve the issue? You're basically saying that they were wrong for filing it because it was redundant and it served no purpose because it was redundant. Well, if it didn't serve a purpose, then why did the trial court tell them to do this? Why did the trial court deny it? Why didn't the trial court strike it? Bonhomme doesn't say, Bonhomme addressed the issue of whether there are other ways to preserve the issue of error in a dismissal of a count like the fraud count in that second amended complaint. For example, in post-trial motions, motions in limine or the like, the Bonhomme court, Illinois Supreme Court, in Bolton said no, that's not good enough. Filing a motion for leave to file an amended complaint that's identical to the account that was dismissed isn't any different than the situation that the Illinois Supreme Court addressed in Bonhomme with respect to that. In Bonhomme, when I say she, the appellant's lawyer didn't do anything other than file an amended complaint that had only one count in it. She dropped all the others. There was no indication in the record that there were any attempts made through filing or attempting to file additional counts, whether they were contained in the count that she filed in the single count complaint. In Bonhomme, there was nothing done other than the claim that I'm preserving my rights. Well, I will say that the other thing that they did do here was rather than seek an appeal so that they could present what we think we show were completely inconsistent claims factually, they pled facts inconsistently within their knowledge, contrary to 2613. The facts that they pled allowed only one conclusion, that there was an attorney-client relationship. The fraud count was promised on the absence of an attorney-client relationship. They went ahead on their legal malpractice counts. They presented to the jury. They got a special finding of an attorney-client relationship. They're not claiming that was there. They're claiming on appeal. They're reaffirming the jury's conclusion that there was an attorney-client relationship, but there's a waiver. If that's true, then there was only one claim between the parties. Is that correct? Yeah, I think there was. Well, if that's correct, then how can you file a 304A appeal and have it heard by this court when supposedly we only have jurisdiction? If it's a final and appealable order, it supposedly resolves a claim. When you claim that the claim is identical insofar as both counts are concerned, how are we supposed to entertain an appeal on one aspect of one claim contained in one count? That's a good point, but they were arguing the opposite. And had they sought certification, they would have said these are two separate counts. The point is that if it's the same claim, 304A has no application. Would you agree with that? I would agree with that. But didn't they allege two different theories? It's not that they were saying that they had the same claim. There were two different theories. There were two different – absolutely. There were two different theories. But if you look at the allegations in the complaint, paragraph 17 of the Account 1, Legal Malpractice, they sought legal advice from the firm. Paragraph 18, this is from Mark Umerson, attorney Mark Umerson, who isn't a defendant in this case, says he will handle it, meaning the young associate, Lee Lockwood. Handle what? Well, he's the lawyer. He's going to handle it. And then after that, they have all these allegations about how he's handling it as their lawyer and how they – there's an allegation. We relied on the legal advice of Lee Lockwood to take us through this complicated maze of transactions at the closing. All of their allegations in the Legal Malpractice count, factual allegations, they were acting as my lawyer. In the fraud count, what do they allege? They say in paragraph 1, after April 30, 2002, none of these guys were acting as lawyers for the Gaylords. Exactly the opposite. That's a factual allegation. That's inconsistency impermissible under 2613. These counts never made any sense. They were inconsistent. The allegations that they allege permitted one conclusion, that there was an attorney-client relationship, not fraud based on the absence of an attorney-client relationship. Judge Caldwell was correct in dismissing the complaint. There were numerous other deficiencies in the pleading, including, which I get into in the brief, relating to the 2015 punitive damages issues, the failure to plead justifiable reliance, the failure to plead proximate cause as to some of the supposed misrepresentations like this patent point that they made up. Oh, he told me there weren't any patents before closing. Well, they knew there weren't any patents at closing. That was the evidence at trial, and it's still closed. Where's the proximate cause? Where's the reliance? When were you taken by surprise insofar as the appeal and the claim that they preserved the right to review whether or not the fraud claim stated the cause of action? I can't say I knew what they were going to do or not do. All I know is they didn't follow the rules. You mean they didn't follow the factual scenarios contained in other cases that have been approved as establishing lack of abandonment? Well, I guess I also took it as an abandonment. When they proved legal malpractice, when they got a special jury finding that there was an attorney-client relationship and it went in their appellate briefs, they're still taking the position that that was correct. Well, that might be subject to a surprise, but I don't know that you've answered my question, which is relative to whether or not they abandoned the claim as opposed to continuing to make a claim that you don't believe is meritorious. All I can say is what the record was, what Foxcroft says, what the rules require, and what they did in pursuing their case to a jury verdict, and what they're doing now. What more can I say? I can't say anything more than that. You can ask that we affirm the decision. Well, I'd love to. I'd appreciate it if you would do that. I guess I have a couple of points on the damages issue. They made the point in their brief that Judge Caldwell actually addressed the issue of manifest weight in oral argument. And I would say if you take a look at what he said in oral argument, he referred to their damages issue that was in their post-trial motions. If you look at the post-trial motions, the only issue that they argued there was that the damages were too low because of Judge Ayer. He didn't admit this evidence. He admitted this evidence. He gave this jury instruction. He allowed me to make some argument in closing. None of those, by the way, they're not arguing any of those errors now. Every issue relating to damages was tied to Judge Ayer. They never argued that based on the record that the jury had, they couldn't reach the conclusion that they reached, which is the argument that they're raising now for the first time on appeal. The second point is that the damages verdict was well within the range that the jury was permitted to arrive at based on the evidence. The $34,000 in pre-closing damages that they sought, they never proved proximate cause. As I point out in the brief, that was money that was out the door before they say that they came to the Kampion firm and talked about this $34,000 put option. The money was out the door. There's no evidence that that $34,000 put option would have gotten it back for the Gaylords. The closing dollars, 365.3 is what they paid. 182.625 is the jury award, which by the way is in half. We said that the evidence showed that the Gaylords got some value at closing. The jury could have determined that the Gaylords got something at closing, just not what they paid. And there was evidence to support that conclusion, including the fact that basically this company INs, in which the Gaylords got a 38.5% interest, took over what had been ISDs, R&D. And there was plenty of evidence in the record relating to that, including testimony by Mary Nelson and Sharon Munn, among others. There also was, they say, oh, there wasn't an asset purchase agreement and there wasn't a patent assignment, but there was a license. And everybody moved forward with INs after closing as if the R&D that ISD had developed, including patent application work, belonged to the company. Nobody took the position that all this work ISD had done didn't belong to the company. Maybe there wasn't a document that said that, but that's certainly the way all of the shareholders of INs, including Munn, Battis, and Nelson, acted. They were moving forward developing this technology. Number, last point, post-closing damages, the jury also awarded nothing for that. There was unsubstantiated, there was testimony about some credit card charges, $2,700 for meals and the like. It was unsubstantiated. The jury could have chosen not to believe Bobby Gaylor's testimony about that or weighed it and decided it just didn't prove up that any of this had anything to do with what Lee Lockwood or the firm did or didn't do. Should Lee have to pay for somebody's steak dinner? No duty. The other issue was the patent, or Tom Vigil's fees. So after closing, the Gaylors, and this is in the brief, the Gaylors move forward with these patent applications. They have Tom Vigil, thank you. They have Tom Vigil, the patent lawyer, do this, he's appointed their attorney. In fact, they named the Gaylors as co-inventors with Battis. Battis goes ballistic after he finds that, and then the company gets shut down. Why shouldn't Lee, why couldn't the jury have determined that it was inappropriate to tag Lee Lockwood and the Campion Law Firm for that payment in those circumstances? Any other questions? Thank you, sir. Thank you. Mr. Katsaros. Mr. Katsaros, before you begin rebuttal, I have a question that you were running out of time. You talked about policy, about this court sending this case back for a trial on a fraud claim to send a message to lawyers. Do you recall that? Yes. As you were finishing up? Yes. Wouldn't that be completely contrary to sending a message to lawyers? You're asking to return it on a fraud claim where you'd be asking the jury to find that he was not in an attorney-client relationship. Do you understand my point? I do. And if there are avenues to address what you, in your argument and in your brief, almost borderlines on criminal behavior, and that's the ARDC or a report to law enforcement or the state's attorney, does the record indicate that either one of those avenues was pursued? Does the record indicate that? Right. Now, if you want an answer off the record, I can tell you what happened. Is Mr. Lockwood still a licensed attorney in the state of Illinois? Yes. In answer to your question, I do believe public policy would be furthered by sending it back because the trial court said that the reason he was not allowing the fraud claim to go forward was because lawyers can't be sued for fraud, period. And that's not the law in Illinois. Well, lawyers can be sued for fraud, but I don't believe it's within the attorney-client relationship. Absolutely correct. That is correct. And that's why count three and the second count in the second amended complaint, which are identical, always said these lawyers were not in an attorney-client relationship with the gaolers. That's why we made it patently clear in that pleading so we could plead in the alternative. And the court said you cannot plead in the alternative against a lawyer, and he's only authority for that. Mr. Graham says if you look at the complaints or the counts, you allege an attorney-client privilege, even though you start off by denying it, you start alleging it. So what's your response to Mr. Graham's statement? That is not an accurate statement. With all due respect to counsel, that is not an accurate statement of how count two in the second amended complaint and the third amended complaint are pled. They are absolutely distinct, and there's no allegation of attorney-client relationship in the second count of either complaint. Counsel, my recollection of the record as far as what the trial court said is not exactly the same as yours. I don't recall that the trial court said that lawyers couldn't be sued for fraud. I think my recollection is what the trial court did is looked at the two counts and the allegations and didn't see a difference in those. And I think that's what my recollection tells me about what was articulated, and obviously we'll take another look at the record for that. Your Honor, as I recall, I believe there's reference in the briefs quoting Judge Caldwell on his analysis and the basis for not allowing fraud to go forward, because it was important and I did want to preserve that and bring it to the court's attention. The only case that the defendants ever quoted to the circuit court as a basis for not allowing inconsistency in pleading is Church v. Adler, in which the plaintiff in that case alleged in one count that she was permanently disabled and in the second count that she had fully recovered from her injuries. That has no applicability to our case. As to the issues involving proximate cause and this allegation that the Gaylors put their name on the patent applications and that's why the inventor quit the venture, that was explained at trial. I cross-examined Tom Vigil, one of the patent lawyers who worked for the plaintiffs after the closing, and Vigil explained I recommended to the Gaylors that they put their name on the patent applications because we couldn't find the inventor after the closing and the only way to move the business project forward was if you had some addition to the intellectual property, we could do it that way. When the inventor raised an objection, the Gaylors backed off the application, allowed the refiled applications to go forward in the inventor's name only, and he abandoned them and never took them forward. It was a red herring, we explained in the trial, and there was no basis for the jury to cut the undisputed evidence of the capital expenses at trial in half. So, in summary, this trial judge carved out a niche for lawyers which is no support in Illinois law. In the Code of Civil Procedure, the case law, the appellate court, or public policy, we ask you to reverse and we appreciate your attention. Any questions? Thank you. Thank you. Take the case under advisement. There will be a short recess.